IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE ) <br> INSURANCE COMPANY as subrogee of ) <br> MICHAEL HARVEY KNAPP and ) <br> LOIS JEAN KNAPP ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> vs. ) <br> ) <br> NORTHGATE PARTS, INC. ) <br> and NORTHGATE PARTS & ) <br> RV CENTER, LLC ) <br> ) <br> **Defendants.** ) | No. 1:13-cv-99 <br> JUDGE CARTER |

## PLAINTIFF'S MEMORANDUM RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Plaintiff State Farm Mutual Automobile Insurance Company as subrogee of Michael Harvey Knapp and Lois Jean Knapp (hereinafter "Plaintiff" or "State Farm") makes this response to Defendants' Memorandum in Support of its Motion for Summary Judgment to show that the Defendants' arguments, as presented in the memorandum filed with their motion, are factually disputed and insufficient to support summary judgment in their favor.

### II. THE PERTINENT FACTS OF THIS CASE

In April of 2010, Michael Harvey Knapp and Lois Jean Knapp (the "Knapps") took their 2007 Monaco Camelot motorhome (the "RV") to Defendant Northgate Parts,

1

Inc. ("Northgate") for repair work. (Deposition of Michael Knapp at p. 7, l. 12-18; attached as Exhibit A hereto). While the RV was in the possession of Northgate, Northgate's Service Manager Harvey Solomon advised Mr. Knapp that Northgate could also perform maintenance work in changing the "oil, lube, and filters" on the RV; to which Mr. Knapp agreed. (Deposition of Michael Knapp at p. 7, l. 12-18). Mr. Knapp did not remain at the Northgate facility while the service was being performed. (Deposition of Michael Knapp at p. 8, l. 18). The RV was entrusted to Northgate to perform maintenance and during the time of the maintenance was in the exclusive possession and control of Northgate. (Deposition of Michael Knapp at p. 8, l.18). Northgate generated a service ticket dated April 13, 2010, for the maintenance portion of the service performed on the RV. (Doc. 23-3, p. 4). The service items indicated on the "***Reprint***"[1] of the Northgate Invoice include work being performed in the engine compartment of the RV. (Doc. 23-3, p. 4). The Knapps picked up the RV from Northgate and returned to their home in Ringgold, Georgia, approximately 17 miles, following the maintenance service. (Deposition of Michael Knapp at p. 11, l. 1). The Knapps did not drive the RV until approximately two days following the service performed by Northgate, when Mr. Knapp drove the RV from Ringgold, Georgia to Renfro Valley, Kentucky (approximately 200 miles). (Deposition of Michael Knapp at p. 11, l. 16; p. 13, l. 13-17). After staying in Renfro Valley for a "couple of days", the Knapps began their return trip from Renfro Valley to Ringgold driving the RV and towing their 2006 Jeep Liberty. (Deposition of Michael Knapp at p. 14, l. 7 - 23).

---

[1] The "***Reprint***" is dated May 11, 2010.

Approximately 90 miles into the return trip, the RV erupted into fire completely destroying the RV, its contents, and the 2006 Jeep Liberty. (Deposition of Michael Knapp at p. 14, l. 7 – 23; Doc. 24, Defendants' Statement of Facts, page ID# 110-111).

Forensic Mechanic and Vehicle Fire Inspector Mark Sargent ("Mr. Sargent") inspected the RV on behalf of the Plaintiff following the fire. Mr. Sargent determined that the fire began in the engine compartment of the RV following transmission fluid being expelled through the dipstick tube onto hot engine components during RV operation. (Doc. 23-1, Exhibit A to Defendants' Motion for Summary Judgment, PageID# 85). The RV at issue has a locking dipstick mechanism on the transmission fluid reservoir. To remove the transmission fluid dipstick, one must unscrew the T-handle thereby opening the dipstick lock mechanism, and then pull the dipstick from the reservoir. (Deposition of Mark Sargent, p. 17, l. 18-21; attached as Exhibit B hereto). To secure the dipstick back into place, logically the process is reversed. Upon inspection following the fire, the transmission dipstick was found to be in an unlocked position. (Doc. 23-1, Exhibit A to Defendants' Motion for Summary Judgment, PageID# 81). Mr. Knapp never unlocked the transmission dipstick. (Deposition of Michael Knapp, p. 16, l. 3-13). The fluid expulsion occurred and, specifically, the fire started as a result of the transmission dipstick not being properly locked into place after the RV was serviced. (Doc. 23-1, Exhibit A to Defendants' Motion for Summary Judgment, PageID# 85). If the transmission dipstick were properly sealed, no fire would have occurred. (Deposition of Mark Sargent, p. 44, l. 24 – p. 45, l. 3).

3

Northgate denies that any of its employees checked the RV transmission fluid level during the maintenance service; and, by implication, Northgate denies that any of its employees unlocked the transmission dipstick while servicing the RV. (Doc. 23-3, Affidavit of Harvey Solomon, PageID# 103 – 104).

Mr. Knapp did not unlock the transmission dipstick. (Deposition of Michael Knapp, p. 16, l 3-13).

Within approximately 300 miles of operation of the RV following Northgate's service in the engine compartment of the RV, fluid in the engine compartment ignited and destroyed the RV, its contents, and the Jeep Liberty. (Deposition of Michael Knapp, p. 11, l. 16-; p. 13, l. 13-17; also Doc. 23-1, PageID# 85; and Doc. 23-3, PageID# 106)

Mr. Sargent has over thirty (30) years of experience in the automotive service industry. (Deposition Mark Sargent, p. 15, l. 9-11). As part of that experience, Mr. Sargent has performed service maintenance on recreational vehicles. (Deposition Mark Sargent, p. 16, l. 21-22). Transmission fluid is indeed routinely checked during normal service procedures. (Doc. 23-1, PageID#: 85). It is a normal and customary task for service shops, like Northgate, to check the transmission fluid during an oil change or a routine maintenance service. (Deposition Mark Sargent, p. 16, l. 14-18). When an oil change service such as the one at issue is performed, "one thing that has to be done" is to check the fluid levels; "It's part of the job". (Deposition Mark Sargent, p. 20, l. 1-5). The transmission fluid dipstick should have been removed as part of Northgate's normal service procedure. (Deposition Mark Sargent, p. 16, l. 9-10; p. 47, l. 22 – p. 48, l.16).

## III. ARGUMENT

### A. Standard for Summary Judgment

The issue in Defendants' Memorandum in Support of its Motion for Summary Judgment is whether the Defendant should be immunized from liability as a matter of law under (A) the Tennessee Consumer Protection Act regardless of any deceptive or fraudulent actions perpetrated; (B) all claims of Negligent Misrepresentation regardless of any deceptive or fraudulent actions perpetrated; and (C) all claims of Fraudulent Misrepresentation regardless of any deceptive or fraudulent actions perpetrated.

Summary judgment is proper "when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Parsons v. S. Tenn. Med. Ctr., LLC*, 2014 U.S. Dist. LEXIS 71264, at *4 (E.D. Tenn. May 23, 2014) (quoting Fed. R. Civ. P. 56(a)). The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *Parsons*, 2014 U.S. Dist. LEXIS 71264, at *4 (citing *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F. 3d 888, 897 (6th Cir. 2003)). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Parsons*, 2014 U.S. Dist. LEXIS 71264, at *4 (citing *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F. 3d 900, 907 (6th Cir. 2001)). The non-movant, however, cannot rely merely on its allegations; it must submit "significant probative evidence to support its claims." *Parsons*, 2014 U.S. Dist. LEXIS 71264, at *4 (citing Celotex, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F. 3d 797, 800 (6th Cir. 2000)). "Should the non-movant fail to provide

5

evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court." *Parsons*, 2014 U.S. Dist. LEXIS 71264, at *4 (citing *Street v. J.C. Bradford & Co.*, 886 F. 2d 1472, 1479 (6th Cir. 1989)).

In considering a motion for summary judgment, the Court is limited to determining whether the case contains sufficient evidence from which a jury could find for the non-movant. *Parsons*, 2014 U.S. Dist. LEXIS 71264, at *4-5 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)). If the Court concludes that a reasonable jury could not find in favor of the non-movant, the Court should enter summary judgment. *Parsons*, 2014 U.S. Dist. LEXIS 71264, at *5 (citing Anderson, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994)). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. *Anderson*, 477 U.S. 242 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.*

A. **Negligence**

Plaintiff alleges that Northgate was negligent in that Northgate failed in its duty to carry out and complete maintenance work on the RV with reasonable care, in a manner commensurate with its standing as professional RV maintenance technicians and/or mechanics when it failed to lock the transmission fluid dipstick.

Plaintiff restates defendants' statement of the standard of negligence pursuant to Tennessee law in that a negligence claim contains five causes of action: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant breaching that duty; (3) an injury or loss to the plaintiff; (4) causation in fact; and (5) proximate or legal cause. *Waste Mgmt., Inc. of Tenn. v. S. Cent. Bell Tel. Co.*, 15 S.W. 3d 425, 430 (Tenn. 1997).

For the purposes of its motion, Defendant appears only to argue that Plaintiff cannot offer any evidence of prong (2) of the analysis above; i.e. "conduct by the defendant breaching "[that duty]". In essence, Defendant that this court should dismiss Plaintiff's negligence claims for the same reason the contract claim should be dismissed, *i.e.* because Plaintiff can offer no "contradicting proof" to the affidavit testimony of Northgate's representatives denying that any employee of Northgate actually failed to lock the transmission dipstick housed in the engine compartment. (Doc. 24, Defendants Memorandum, PageID# 114, ¶1). As such, Plaintiff addresses only the issue of "conduct by the defendant" in this Response.

Negligence may be proved by direct or circumstantial evidence, or both. *McBride v. Proctor & Gamble Mfg. Co.*, 300 F. Supp. 1150 (East. Dist. TN 1969). The plaintiff is not required in making out his case, to eliminate all other possible causes or inferences than that of the defendant's negligence, but may proceed to show by the evidence that the defendant's negligence is more probable than any other cause. *Id.*

Frankly, Plaintiff is not currently aware of any eyewitness that will testify that they actually directly witnessed Northgate fail to lock the transmission fluid dipstick. As

7

set forth above, Mr. Knapp did not remain at the Northgate facility while the service was being performed and, candidly, will testify that he did not witness any representative of Northgate remove the transmission dipstick. To be sure, the RV was in the exclusive control of the RV during the time of the alleged occurrence leading to the fire.

Nonetheless, Plaintiff has presented evidence of the fact that RV was entrusted to Northgate pursuant to a contract for services to change the "oil, lube, and filters" on the RV. Furthermore, Plaintiff has presented evidence of the fact that during the performance of the maintenance in the engine compartment of the RV, the RV was in the exclusive possession and control of Northgate mere days preceding the fire event starting in the engine compartment of the RV. Plaintiff has further presented evidence of the fact that approximately 300 miles after Northgate's service in the engine compartment of the RV, the RV burst into flames as a result of fluids igniting in the engine compartment of the RV, the very area of the RV where Northgate was working. Plaintiff has presented evidence that upon inspection following the fire, the transmission fluid dipstick was found to be in an unlocked position. Plaintiff has presented evidence that Mr. Knapp did not unlock the transmission dipstick. Despite Defendant Northgate's affidavit denial that Northgate employees did not fail to lock the transmission dipstick, Plaintiff has presented evidence that it is a normal and customary task in the industry for service shops, like Northgate, to check the transmission fluid during an oil change or a routine maintenance service like the one at issue. Furthermore, Plaintiff has presented evidence that the transmission fluid dipstick should have been removed as part of a service facility's, like Northgate's, normal and customary procedure during service like the one at issue.

In any event, the reasonable inference from the facts and circumstances presented surrounding the fire are sufficient to survive a summary judgment determination. The Plaintiff and Defendant have presented direct evidence that mere days preceding the fire event Northgate was in exclusive control of the instrumentality that lead to the property damage at issue in this case. Further, Plaintiffs have presented evidence from which one may reasonably infer that Northgate, while working in the engine compartment of the RV changing the "oil, lube, and filters", would have checked and should have checked the transmission fluid during an oil change or a routine maintenance service like the one at issue; as is normal and customary in their service industry. In doing so, it would be fair to infer that Northgate unlocked the transmission dipstick and failed to securely lock the transmission dipstick prior to returning the RV to the Knapps. Plaintiff submits that under these facts and inferences as applied viewed in a light most favorable to the Plaintiff, the circumstances surrounding the fire are such that the negligence of Northgate can fairly be inferred and it is reasonable that a jury could conclude that the Defendant's failures are more probable than any other cause of the injury(ies) at issue.

Such inferences, when viewed in a light most favorable to the Plaintiff non-movant, constitute an existence a genuine issue of material fact. To be sure, such inferences when viewed in a light most favorable to the Plaintiff, the non-movant, rise to the level of material disputed issue(s) sufficient to survive this Motion for Summary Judgment. *Parsons*, 2014 U.S. Dist. LEXIS 71264.

9

## B. Contract

The contract claim stands alone, but the analysis of the dispute of facts giving rise to the breach of contract claim(s) is similar to the breach of negligence analysis set forth above.

Defendants set forth in their brief that the essential elements of a breach of contract claim under Tennessee law are (1) the existence of a valid and enforceable contract, (2) a deficiency in performing the contract amounting to breach, and (3) damages caused by breach. *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287 (Tenn. 2011). In addition to the explicit terms, contracts may be accompanied by implied duties, which can result in a breach. *Id.* citing *Aetna Cas. & Sur. Co. v. Gilreath*, 625 S.W.2d 269, 275 (Tenn. 1981) (explaining that the absence of an express contractual duty did not preclude the existence of an implied duty). Plaintiff herein would add that as a general rule, all contracts for services contain an implied duty to perform services skillfully, carefully, diligently, and in a workmanlike manner. *Price v. Home Depot U.S.A., Inc.*, No. 06-2216, 2008 U.S. Dist. LEXIS 61628, 2008 WL 2910610, at *5 (W.D. Tenn. Mar. 6, 2008). American Jurisprudence recognizes this implied duty as the "general rule." 17A Am. Jur. 2d Contracts § 612 (2011).

The proof of the existence of damages are not challenged by Defendants for the purposes of their motion. The issues presented for analysis appear to be whether there is a question of fact as to the existence of a valid contract and whether there is a question of fact as to the breach of any such contract.

Defendant argues that this court should dismiss Plaintiff's breach of contract claims because Plaintiff can offer no "contradicting proof" to the affidavit testimony of Northgate's representatives denying that any employee of Northgate actually failed to lock the transmission dipstick housed in the engine compartment. (Doc. 24, Defendants Memorandum, PageID# 114, ¶1).

Northgate's Service Manager Harvey Solomon advised Mr. Knapp that Northgate could perform maintenance work in changing the "oil, lube, and filters" on the RV. When Mr. Knapp delivered the RV to Northgate for the service described and offered by Mr. Solomon, a contract for services was created between the parties. The service contract once created, also created an implied duty on Northgate to perform the services skillfully, carefully, diligently, and in a workmanlike manner. *Price*, 2008 U.S. Dist. LEXIS 61628, at *5 (W.D. Tenn. Mar. 6, 2008); 17A Am. Jur. 2d Contracts § 612 (2011).

Defendant Northgate is engaged in the business of servicing motorhomes like the RV at issue. As such, when Northgate undertook the contract for service of the RV described above to change the "oil, lube, and filters" on the RV, it likewise undertook a duty to perform the service skillfully, carefully, diligently, and in a workmanlike manner commensurate with that of the standard in its industry. *Id.* As set forth above, Plaintiff has introduced evidence that from which one may reasonably infer that Northgate, while working in the engine compartment of the RV changing the "oil, lube, and filters", would have and should have checked the transmission fluid during an oil change or a routine maintenance service like the one at issue; as is normal and customary in their service

industry. Upon inspection following the fire at issue, the transmission fluid dipstick was found to be in an unlocked position. Mr. Knapp never unlocked the transmission dipstick. Given Northgate's exclusive control of the RV in very close temporal proximity to the fire at issue, work being performed in the very area where the fire began, and an industry custom to in fact check the transmission fluid levels, Plaintiff has introduced evidence from which one might reasonable conclude that Northgate unsecured the transmission dipstick and failed to lock the transmission dipstick before returning the RV to the Knapps. Such would be a failure of the implied duties of the service contract.

Plaintiff submits that under these facts and inferences as applied viewed in a light most favorable to the Plaintiff, the circumstances surrounding the fire are such it can be fairly inferred and it is reasonable that a jury could conclude that the service work performed by Northgate was not performed skillfully, carefully, diligently, and/or in a workmanlike manner.

## CONCLUSION

Plaintiff submits the following analogy: If one were to observe rabbit tracks in the snow leading to hole in the ground and no like tracks exiting the hole, it would be reasonable to infer that a rabbit entered the hole, even though no one directly saw the rabbit go into the hole.

Plaintiff has introduced evidence of the proverbial "tracks in the snow". Mere days preceding the fire event Northgate was in exclusive control of the instrumentality that lead to the property damage at issue in this case. Further, Plaintiffs have presented

evidence from which one may reasonably infer that Northgate, while working in the engine compartment of the RV changing the "oil, lube, and filters", would have checked the transmission fluid during an oil change or a routine maintenance service like the one at issue; as is normal and customary in their service industry. Upon inspection following the fire, the transmission fluid dipstick was found to be unlocked. Mr. Knapp did not unlock the transmission dipstick. The inference to be drawn from the progression of facts described, creates a question of fact as to Defendant's failure(s) in servicing the RV.

Such inferences, when viewed in a light most favorable to the Plaintiff non-movant, constitute an existence a genuine issue of material fact as to whether Northgate performed the service contract in a skillful, careful, diligent, and/or workmanlike manner. Such inferences, when viewed in a light most favorable to the Plaintiff non-movant, constitute an existence a genuine issue of material fact as to whether Northgate negligently left the transmission dipstick in an unlocked position when it returned the RV at issue to the Knapps.

To be sure, such inferences when viewed in a light most favorable to the Plaintiff, the non-movant, rise to the level of material disputed issue(s) sufficient to survive this Motion for Summary Judgment. *Parsons*, 2014 U.S. Dist. LEXIS 71264. Plaintiff submits that under these facts and inferences as applied viewed in a light most favorable to the Plaintiff, the circumstances surrounding the fire are such that the negligence of Northgate can fairly be inferred and it is reasonable that a jury could conclude that the Defendant's failures are more probable than any other cause of the injury(ies) at issue.

For the reasons set forth above, summary judgment should not lie in favor of the Defendant in regards to any of Plaintiff's claims; whether by contract or by tort.

Submitted this 7th day of September, 2014.

                                   */s/ Jason E. Fisher*
                                   Jason E. Fisher, Esq. (BPR No. 021467)
                                   Dustin S. Crouse, Esq. (BPR No. 029950)
                                   QUIST, CONE & FISHER, PLLC
                                   2121 First Tennessee Plaza
                                   Knoxville, Tennessee 37929
                                   Ph: (865) 524-1873
                                   Fax: (865) 525-2440
                                   jefisher@qcflaw.com

                                   Attorneys for State Farm Mutual Automobile
                                   Insurance Company as subrogee of Michael
                                   Harvey Knapp and Lois Jean Knapp

## CERTIFICATE OF SERVICE

I hereby certify that on this the **7th day of September, 2014**, a copy of the foregoing Document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

/s/ **Jason E. Fisher**
Jason E. Fisher (BPR #021467)